

SO ORDERED.

SIGNED this 15th day of May, 2017.

_____
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# DURHAM DIVISION

| | |
|---|---|
| IN RE: | |
| RALPH FOSTER, | CASE NO. 16-80601 |
| | CHAPTER 13 |
| DEBTOR. | |

## ORDER SUSTAINING OBJECTION TO CONFIRMATION AND GRANTING MOTION TO DISMISS CASE

THIS MATTER came before the court for hearing on May 4, 2017, after due and proper notice, upon the Motion by Trustee to Dismiss Case (Docket No. 115) (the "Motion to Dismiss") and the Objection by Trustee to Confirmation of Third Plan (Docket No. 114) (the "Objection"). Wells Fargo Bank, N.A. joined in the Motion to Dismiss and Objection (Docket No. 120). Benjamin Lovell appeared on behalf of the Standing Trustee, Ralph Foster appeared pro se, and William Miller, Bankruptcy Administrator, appeared.

After considering the matters set forth in the Motion to Dismiss, the arguments of counsel for the Trustee and of the Debtor, and all matters of record, the court makes the following findings and conclusions:

1. Ralph Foster (the "Debtor") filed a petition for relief pro se under Chapter 13 of the Bankruptcy Code on July 12, 2016. The schedules and other statements required by 11 U.S.C. § 521 were not filed with the petition; the clerk's office issued a notice to the Debtor of missing schedules and documents, including the Notice to Creditors and Proposed Plan, due by July 27, 2016.

2. On July 25, 2016, the Debtor filed a motion requesting an additional 21 days to file his schedules and other missing documents. The court entered an order granting an extension of time through August 17, 2016. On August 18, 2016, the Debtor filed his Summary of

1

   Schedules, Schedules A through J, Form 91C Exempt Property Claim, and Chapter 13 Statement of Current Monthly Income.

3. The Debtor also filed a second motion to extend time (Docket No. 20) to file a proposed Chapter 13 plan, in which he represented that he was current on all of his secured and unsecured debt obligations with the exception of his mortgage debt. He further indicated that Wells Fargo Bank, N.A./Wells Fargo Home Mortgage ("Wells Fargo") had asserted itself as the holder of his mortgage, but he disputed Wells Fargo's claim. He claimed he had also become aware of certain facts regarding his loan as it relates to Government National Mortgage Association ("Ginnie Mae"). The Debtor indicated that he had filed a complaint in the United States District Court for the Middle District of North Carolina, asserting claims against Wells Fargo for declaratory judgment and slander of title. He requested an extension of time to propose any Chapter 13 plan until either there was a final ruling by the District Court, or Ginnie Mae had filed a proof of claim.

4. At the hearing on the motion to extend time on September 8, 2016, the Trustee expressed concern that the bankruptcy case had been pending for almost two months, and the Debtor had neither filed a proposed plan nor commenced plan payments as required by the Bankruptcy Code. The court entered an order (Docket No. 25) providing the Debtor with 10 days to file a notice of proposed plan and begin plan payments, or his case would be automatically dismissed.

5. The Debtor filed his first notice to creditors and proposed plan on September 19, 2016 ("First Plan), proposing plan payments of $19.10 per month and an administrative fee to the Trustee of $2.28 per month, with all secured and priority creditors to be paid by him directly (Docket No. 30). He also filed various amended schedules and statements on that date.

6. The case was automatically dismissed on September 20, 2016 due to the Debtor's continued failure to file a Statement of Financial Affairs as required by 11 U.S.C. § 521 (Docket No. 32).

7. On September 23, 2016, the Debtor filed his Statement of Financial Affairs, various amended schedules, and an amended notice to creditors and proposed plan (Docket No. 37) ("Second Plan"), along with an emergency motion to vacate the dismissal order and reinstate the case.

8. At the hearing on the motion to vacate on October 20, 2016, the Debtor asserted that he believed he had delivered his Statement of Financial Affairs to the clerk's office at the same time that he filed his schedules. The court granted the Debtor's motion, urged him to obtain counsel, and cautioned him that going forward, it was his responsibility, being pro se, to familiarize himself and comply with the Bankruptcy Code and Rules.

9. On October 28, 2016, the Debtor commenced an adversary proceeding, Case No. 16-09031,[1] against Wells Fargo, Shapiro & Ingle, LLP, and Ginnie Mae asserting various claims relating to a note and deed of trust, and prepetition foreclosure proceedings on his residence.

---

[1] The Debtor filed two amended complaints in the adversary proceeding, the latest on March 3, 2017.

10. The most current versions of Debtor's schedules and amended schedules indicate that he owns a residence with a total value of $333,331.00. He also owns a town house with a value of $120,000.00, encumbered by a first mortgage held by State Employee's Credit Union in the amount of $60,445.00 per his Schedule D.  The Debtor lists various personal property including a 2011 Toyota Camry with a lien in favor of Car Max Auto Finance in the amount of $15,628.00, a 2012 Volkswagen Jetta with a lien in favor of Ally Financial in the amount of $16,224.00, and a 2012 Volkswagen Jetta with a lien in favor of Flagship Credit Acceptance in the amount of $13,987.00.  As to unsecured creditors, the Debtor lists priority claims by the IRS in the amount of $21,776.00, the NC Department of Revenue in the amount of $4,238.00,[2] and State Employees Credit Union in the amount of $3,100.66. General unsecured claims totaling $2,902.61 are listed in the latest amended Schedule E/F. The Debtor listed Ginnie Mae/Wells Fargo as an unsecured creditor in an unstated amount based upon a promissory note.

11. The Debtor's latest amended Schedule I shows that he is employed as a job developer and his non-filing spouse works as an educator. Their net household income totals $9,609.00. Per the Debtor's amended Schedule J, his household expenses total $9,572.00, leaving him $37.00 in monthly net income. His Chapter 13 Statement of Current Monthly Income shows that he has above median income and that his applicable commitment period is 5 years.

12. On January 25, 2017, the court held a hearing on motions by CarMax Auto Finance and Ally Financial for relief from stay and co-debtor stay regarding the 2011 Toyota Camry and one of the two 2012 Volkswagen Jettas, respectively, as well as on the Debtor's Second Plan to which the Trustee had objected.[3] The Notice of Proposed Plan and Order Confirming Plan contained the following special provision:
    > Wells Fargo Bank has filed a claim in the amount of $450,839.37 secured by a deed of trust on the Debtor's real property known as 308 South Bend Drive, Durham, NC ("the real property"). The claim of Wells Fargo Bank shall be determined by the court as part of the adversary proceeding (AP No. 16-09031) to avoid the lien in favor of Wells Fargo Bank. No disbursements shall be made to Wells Fargo Bank until a determination is made by this Court as to the treatment of said claim.

    (Docket No. 57, p. 4, section III.F.).

13. The Trustee objected to confirmation of the Second Plan on grounds that (1) the proposed plan payments were not sufficient; (2) the plan did not comply with 11 U.S.C. § 1325(a)(4) in that there appeared to be non-exempt equity sufficient to pay all claims in full; (3) the Debtor had provided no sound reason to overturn the presumption created in 11 U.S.C. § 1326(c) in favor the Trustee making payments to creditors; (4) the plan violated 11 U.S.C. § 1322(a)(2) in that all priority claims were not required to be paid in full during the duration of the plan; and (5) that the plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3) asserting:

---

[2] The NC Department of Revenue has not yet filed a proof of claim in this case.
[3] The Trustee sent a Notice of Proposed Plan and Order Confirming Plan for the Debtor's Second Plan to creditors on December 9, 2017 (Docket No. 57).

> [t]he Debtor proposes to pay no dividend to unsecured claims while retaining a residence with mortgage payments of over $2,500.00 per month, a townhome with payments of approximately $719.00 per month and three encumbered vehicles. Such a proposal is an abuse of the provisions of Chapter 13 and is patently inequitable to general unsecured claims.

(Docket No. 61, pp. 2-3).

14. At the January 25, 2017 hearing, the Debtor indicated that he understood the Trustee's objections to confirmation of his plan. He further disclosed that he was in default on the terms of his proposed plan, as he had not been making direct payments to either his secured or priority creditors. The Debtor requested that he be allowed an additional 10 days to propose a further amended plan in which payments to those creditors would be paid inside the plan.

15. The court sustained the Trustee's objection on the basis that the Debtor's amended proposed plan violated numerous provisions of the Bankruptcy Code, allowed him 10 days to file an amended plan, and again reminded the Debtor that since he had chosen not to retain counsel, it was his responsibility to familiarize himself and comply with the Bankruptcy Code and Rules.

16. In addition, the court granted Ally Financial's motion for relief from the automatic stay and co-debtor stay for a 2012 Volkswagen Jetta.[4] The court continued the hearing on CarMax's motions until the next month based upon the agreement of the parties that the Debtor would commence adequate protection payments of $63.00 a month.

17. On February 6, 2017, the Debtor filed another proposed plan ("Third Plan"), proposing payments of $1,612.36 for a period of 53 months beginning March 2017. The plan provided for payments on his vehicles and the tax claims inside the plan, as well as a dividend of 100% plus interest to general unsecured creditors. This proposed plan provided Wells Fargo with the same treatment as the previous proposed plan. (Docket No. 92). The Trustee sent an Amended Notice and Proposed Order to creditors on February 8th, setting the plan for hearing on March 23rd (Docket No. 93).

18. On February 23, 2017, CarMax's motions for relief from stay came on for hearing again. The Debtor had failed to remit an adequate protection payment to the Trustee, but the Trustee had made a payment with funds on hand. CarMax consented to the continuance of the motions for relief from stay to the date of the confirmation hearing the following month on the condition of adequate protection payments in the interim. The Debtor was ordered to make the February adequate protection payment by the end of February, to make the March adequate protection payment prior to March 23, 2017, and to make the February plan payment by the end of February.

19. At the February 23rd hearing, the Trustee noted that plan confirmation on March 23, 2017 seemed unlikely because the Debtor had not been making his proposed plan payments and

---

[4] According to the motion for relief, payments had not been made since June 2016.

the proposed plan did not appear feasible, particularly in light of the treatment of Wells Fargo's claim.  The court once again advised the Debtor to seek counsel, and expressed concern that it did not appear that he was performing his obligations as required by Chapter 13 of the Bankruptcy Code.

20. On March 23, 2017, the court held a hearing on the Debtor's Third Plan.  The Trustee again objected to the plan on the grounds that plan payments were not sufficient, thus the plan was not feasible (Docket No. 102).  The Trustee argued that if the claim of Wells Fargo was found to be an unsecured claim in the amount of $450,839.37 then the amended plan proposing payment in full of unsecured debt was not feasible as the excess value in the residence beyond the Debtor's exemption would constitute liquidation value that would have to be paid to unsecured creditors, including Wells Fargo. Alternatively, if the mortgage lien of Wells Fargo was determined to be valid, the amended plan payments were not sufficient to satisfy the ongoing mortgage payments of $2,538.54 per month and pre-petition arrearage in the amount of $147,728.54.[5]  Therefore, under no circumstances was a plan payment of $1,612.36 sufficient.

21. In response, the Debtor argued Wells Fargo could be determined to have no claim at all, and he objected to the Trustee holding him to the specific language of his plan.  The Debtor argued that his proposal of a 100% dividend was estimated, and that it was sufficient that he commit his disposable income to the plan, with unsecured creditors receiving their pro rata share.

22. The court again sustained the Trustee's objection, and at the conclusion of the hearing, the court explained to the Debtor that under any scenario, given the unresolved issues of Wells Fargo's claim and the value of his interests in real property, the plan payments would need to be increased significantly from $1,612.36 in order for the court to find the plan feasible.

23. On March 23, 2017,[6] the Debtor proposed another amended plan ("Fourth Plan"), again with a proposed plan payment of $1,612.36 per month for 53 months and with the same treatment for his priority and secured creditors as the previous plan (Docket No. 106).  However, the Fourth Plan did not propose a 100% dividend to general unsecured creditors, but rather stated that, "Debtor will pay all projected 'disposable income' over the 'applicable commitment period.'" (p. 5, section VIII). On March 29, 2017, the Trustee sent out an amended Notice and Proposed Order, with a special provision for Wells Fargo stated as follows:
> Wells Fargo Bank has asserted ongoing monthly payments of $2,538.54 and pre-petition arrearage of $147,728.54.  The Debtor has filed an adversary proceeding (AP No. 16-09031) which may affect the amount of the claim and the validity of the deed of trust in favor of Wells Fargo Bank.  To the extent Wells Fargo Bank is determined to have an allowed unsecured claim as a result of the adversary proceeding, Wells Fargo Bank shall receive its pro rata share of the Debtor's projected disposable income paid into the plan.  The claim of Wells Fargo Bank

---

[5] The Wells Fargo proof of claim (No. 8) shows that funds have not been received on its loan since April 2012, and the Debtor admitted that he was not making payments to Wells Fargo.

[6] The Debtor filed this amended plan on the morning of the confirmation hearing for his Third Plan.

5

    shall be determined by the Court as part of the pending adversary proceeding and
    no disbursements shall be made to Wells Fargo Bank until a determination is
    mad[e] by this court as to the treatment of said claim.

(Docket No. 111, p. 4, section III.F.).

24. The Trustee again filed an objection to confirmation on the grounds that the plan did not comply with 11 U.S.C. § 1325(a)(4) and that the plan may not be feasible in that the payments were not sufficient to pay all secured and priority claims in the time limitation regardless of the outcome of the adversary proceeding (Docket No. 114). The Trustee also filed the Motion to Dismiss under 11 U.S.C. § 1307(c)(1) and (c)(5) due to the Debtor's inability to propose a confirmable plan. The Trustee asserts that cause exists under 11 U.S.C. § 1307 to dismiss the case as there has been an unreasonable delay that is prejudicial to creditors (Docket No. 115).

25. On April 11, 2017, the Debtor filed yet another amended plan ("Fifth Plan"). Again, he proposes a plan payment of $1,612.36 per month. He states in this proposed plan that he would commit his equity interests in real property to the payment of creditors but includes no mechanism for funding this provision. In addition, the Debtor filed a response to the objection to confirmation, asserting that his plan was confirmable because he was committing all of his disposable income to the plan. (Docket No. 119). The Debtor also contends that the delays in confirmation have been caused in part by the Trustee due to the Trustee's repeated objections (Docket No. 119).

26. Wells Fargo joined in both the Trustee's Objection and Motion to Dismiss (Docket No. 120). At the hearing on May 4, 2017, the Bankruptcy Administrator stated his support for the Trustee's Motion to Dismiss.

27. At the hearing on May 4, 2017, the Debtor stated that he believed his last proposed plan was confirmable, and asked that he be allowed to proceed on his Fifth Plan. Counsel for the Trustee stated that the Debtor has only made $485.00 in payments to the Trustee over the ten months he has been in Chapter 13, although in his proposed plan filed in February he proposed a $1,612.36 plan payment beginning in March. Therefore at the hearing on May 4, 2017, the Debtor was two plan payments of $1,612.36 behind.

28. The objection to confirmation of the plan presently before the court is well founded and must be sustained. It is the Debtor's burden to show that his plan is feasible and he has not done so. *See In re Goodwin*, No. 07-10442BF, 2007 WL 3256890, at \*6 (Bankr. E.D. Penn. Nov. 2, 2007), (citing *In re Fantasia*, 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997). The plan is not feasible under 11 U.S.C. § 1325(a)(6) as the Debtor has not shown he can consistently make a plan payment greater than $37.00 per month. Section 1325(a)(6) requires that speculative chapter 13 plans not be approved. *Goodwin*, 2007 WL 3256890, at \*6.

29. In addition, the only way for any of the Debtor's proposed plans to be successfully completed would be for Wells Fargo to have no claim against the Debtor at all--either secured or unsecured. As explained in the Trustee's objection to confirmation to the second proposed plan of the Debtor, if Wells Fargo is found to have a secured claim, the plan will have insufficient funds to pay the monthly mortgage payment as well as the $147,728.54 arrearage

over the remaining length of the plan. Conversely, if Wells Fargo is found to have an unsecured claim, the plan will have insufficient funds to comply with 11 U.S.C. § 1325(a)(4), and pay unsecured creditors the amount they would receive if the estate were liquidated under a Chapter 7 because of the liquidation value created by his unencumbered residence and the size of Wells Fargo's resultant unsecured claim (Docket No. 102). A scenario where Wells Fargo has no claim at all is completely speculative.[7]

30. In his response to the Trustee's Objection, the Debtor stated that he filed an amended plan which "commits his equity interests in real property to the plan in payment of creditors." (Docket No. 118, p. 1). In his Fifth Plan filed on April 11, 2017 the Debtor states he will "commit the equity (to the extent of his interest) in the Windsong Lane real property and/or the equity (to the extent of his interest) in the property at South Bend Drive toward full payments to unsecured creditors" without further explanation (Docket No. 119). Again, this speculative language does not help the Debtor meet the feasibility requirement of a Chapter 13 plan. In *In re Jensen*, 425 B.R. 105, 110 (Bankr. S.D.N.Y. 2010), the court found that the debtor's plan was not feasible because it was based in large part on a speculative lawsuit and the unlikely sale of an asset following the death of his healthy mother. *See also Ewald v. Nat'l City Mortgage Co. (In re Ewald)*, 298 B.R. 76, 81 (Bankr. E.D. Va. 2002) (finding that a plan is not feasible if it is contingent upon the debtor obtaining a favorable ruling in state court litigation); *In re Reines*, 30 B.R. 555, 562 (Bankr. D.N.J. 1983) (declining to confirm a plan which is predicated in part on the "highly speculative return from a lawsuit").

31. In an effort to bypass the issue of feasibility, the Debtor's Fifth Plan filed in response to the Trustee's present Objection also provides an alternative treatment for Wells Fargo, such that if Wells Fargo is found to have a secured claim and the Debtor is unable to pay the arrearage, he shall surrender the real property. The court cannot find the Debtor's proposal to remain in his home valued at over $330,000.00 while making no payments on Wells Fargo's potential claim—not even payments to be held by the Trustee pending the outcome of the adversary proceeding—to be a proposal made in good faith. Thus, even under the Debtor's alternative treatment, the plan is not confirmable. *See* 11 U.S.C. § 1325(a)(3).

32. Having considered that this case has been pending for ten months, and that the Debtor's response to the objection to confirmation presently before the court is to file yet another unconfirmable proposed plan, the Debtor's request for additional time to proceed on his Fifth Plan is denied.

33. Section 1307(c)(1) provides that the court may dismiss a case under this chapter for cause, including unreasonable delay by the debtor that is prejudicial to creditors. "A debtor's unjustified failure to expeditiously accomplish any task required either to propose or confirm a chapter 13 plan may constitute cause for dismissal under § 1307(c)(1)." *In re Ellsworth*, 455 B.R. 904, 915 (B.A.P. 9th Cir. 2011*).*

---

[7] The Debtor mentioned at the hearings the possibility of Wells Fargo having no claim; however, in the latest amended complaint in the adversary proceeding, the Debtor seeks a finding that the mortgage debt is dischargeable as unsecured. The amended complaint does not appear to include an allegation that Wells Fargo holds no claim.

7

34. Section 1307(c)(5) provides that denial of confirmation of a plan and denial of a request made for additional time to file another plan is also cause to dismiss a case.

35. As set forth above, and as the complete record in both this bankruptcy proceeding and the adversary proceeding reflect, the court has liberally granted the Debtor numerous accommodations, but at this point the court must conclude that the Debtor is seeking merely to hinder and delay his creditors. Based on the Debtor's multiple proposed plans, it appears that the Debtor either cannot or will not propose a confirmable plan.

36. Even without considering the Wells Fargo claim, other secured and priority claimants of the Debtor have been prejudiced by the unreasonably delay of the Debtor in proposing a confirmable plan. The IRS claim has not been paid during the ten-month period since Debtor filed his bankruptcy case and CarMax Auto Finance has just received three payments of $63.00 as adequate protection on the Debtor's 2011 Toyota Camry during this time. General unsecured claims of SunTrust Bank, State Employees Credit Union (approximately $3,000.00 unsecured claim), and Nordstrom have also not been paid.

37. Further, the court finds that cause exists to dismiss under 11 U.S.C. § 1307(c)(4), as the Debtor has failed to timely make plan payments. As of March 2017, his proposed plans provided for payments of $1,612.36 per month, yet as of the date of the hearing in May, the Trustee has received a total of only $485.00.

    NOW, THEREFORE, it is hereby ORDERED that the Trustee's Objection to confirmation of the Debtor's Chapter 13 plan is SUSTAINED and Trustee's Motion to Dismiss the case is GRANTED. The Debtor's bankruptcy case is hereby DISMISSED.

**END OF DOCUMENT**

PARTIES TO BE SERVED

Ralph Foster
Case No. 16-80601 C-13

All Creditors and Interested Parties in the case